UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*Daniel DeJesus*

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

*Lt. Louis Caviglia   Retired  23 prct*
*Sgt. Brian Parr 5569  23 precient*
*Onil Evenett 3582  Retired 23 prct*
*Billy Hicks  23 precient*
*ADA  Micki Shulman*
*ADA Robert Frazer*
*Honorable Herbert Altman*
*Honorable Edward J. McLaughlin*
*People of the State of New York*
*People of City of New York*

*(In the space above enter the full name(s) of the defendant(s). If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The names
listed in the above caption must be identical to those contained in
Part I. Addresses should not be included here.)*

RECEIVED
SDNY PRO SE OFFICE

2015 DEC 10  PM 3: 32

**COMPLAINT**
under the
Civil Rights Act, 42 U.S.C. § 1983
(Prisoner Complaint)

Jury Trial: ☑ Yes  ☐ No

(check one)

# 15 CV 9687

---

I.   **Parties in this complaint:**

A.   List your name, identification number, and the name and address of your current place of
confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper
as necessary.

Plaintiff     Name  *Daniel DeJesus*
              ID # *03A1713*
              Current Institution *Downstate Correctional Facility*
              Address *Box F  Red Schoolhouse Road*
              *Fishkill, New York 12524-0445*

B.   List all defendants' names, positions, places of employment, and the address where each defendant
may be served. Make sure that the defendant(s) listed below are identical to those contained in the
above caption. Attach additional sheets of paper as necessary.

Defendant No. 1     Name *Lt. Louis Caviglia*              Shield # *Retired*
                    Where Currently Employed *23rd precient  East 103rd*
                    Address *New York, NY 10029*

*Rev. 05/2010*                                    1

Defendant No. 2   Name _Brian Parr_____ Shield # _5569_
                  Where Currently Employed _23rd precinct_ 8am-4pm
                  Address _New York NY 10029_
                  _East 103 st_

Defendant No. 3   Name _Onel Everett_____ Shield # _3582_
                  Where Currently Employed _23rd Precinct_ 8am-4pm
                  Address _New York NY 10029_
                  _East 103 st_

Defendant No. 4   Name _Billy Hicks_____ Shield # _?_
                  Where Currently Employed _23rd Precinct_ 8am-4pm
                  Address _New York NY 10029_
                  _East 103 st_

Defendant No. 5   Name _R. Frazer, M. Shulman_ Shield # _ADA_
                  Where Currently Employed _New York County District_
                  Address _100 Centre Street_
                  _New York, NY 10013_

## II.   Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.   Describe how each of the defendants named in the
caption of this complaint is involved in this action, along with the dates and locations of all relevant events.
You may wish to include further details such as the names of other persons involved in the events giving
rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims,
number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.   In what institution did the events giving rise to your claim(s) occur?
     _23rd Precinct, New York, NY 10029_

B.   Where in the institution did the events giving rise to your claim(s) occur?
     _In lieutenant Caniglias office_

C.   What date and approximate time did the events giving rise to your claim(s) occur?
     _July 25 2000, from 7:pm til 3:am following_
     _my arrest the next day 7-26-00 at 2:30pm_

**D.   Facts:** *I agreed to come to precinct at my brothers request for him to be questioned. We arrived at 7pm, We were separated. I was in lieutenants office, at about 7:20pm Det. Orett Everett came in and asked if I had any knowledge of the crime. I said I did not know anything, he began coming in and out of the office feeding me information, how many times he was shot and where. He asked if I told anyone about anything, I said I did not. I signed a first statement to Det. Everett. But from that point my whole life changed. He began comparing notes with Det. Lombardo, he left. Came back still feeding me information, So I put my head down. I request to see my mother which he agreed to get her but never did. At 10pm, Lieutenant Louis Caroglia entered his office, sat across from me and looks at me for a minute, and say "you know, I don't believe what your telling us," We have witness who saw you up there at the crime scene. So without warnings he got up and left and sent in two more detectives. Detectives Brian Pane and Billy Hicks, whom I made incriminating statement. Number #2.*

<div align="right">

*see attached*

</div>

What happened to you?

Who did what?

Was anyone else involved?

Who else saw what happened?

## III.   Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. *Being held unlawfully, unconstitutionally by use of mental and psychological inducive tactics, trickery, deceit and deprivation by participation of detectives, its supervisors. District attorneys office and state and its officials.*

*No person shall be compelled to be a witness against himself or present evidence against himself. Unlawful custodial interrogation, Miranda violation and due process. unreasonable delay.*

## IV.   Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also known as grievance procedures.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes _____   No __✓__

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s). _____ *no.* _____

_____

B.    Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

    Yes _____   No __✓__   Do Not Know _____

C.    Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

    Yes _____   No __✓__   Do Not Know _____

    If YES, which claim(s)? _____

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

    Yes _____   No __✓__

    If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

    Yes _____   No __✓__

E.    If you did file a grievance, about the events described in this complaint, where did you file the grievance? _____

    1.    Which claim(s) in this complaint did you grieve? _____

    _____

    2.    What was the result, if any? _____

    _____

    3.    What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process. _____

    _____

    _____

    _____

    _____

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here: _____

    _____

    _____

    _____

    _____

    2.    If you did not file a grievance but informed any officials of your claim, state who you informed,

when and how, and their response, if any: _____

_____

_____

_____

_____

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. _____

_____

_____

_____

_____

_____

_____

Note:   You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

V.   Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). _Compensatory, monetary, equitable restitution. Declatory and injunctive relief. Mental Anguish. To invalidate conviction. Certified copy of the Courts written decision and order dated June 6 2002 then H. Altman presided on hearing. Plaintiff also seeks relief in violation of his 1st and 5th amendment rights of slander and the right against self incrimination. Unreasonable delay and involuntary servitude. Freedom of Speech. Malicious prosecution, Harassment_

_____

_____

_____

_____

_____

_____

VI.   Previous lawsuits:

| On these claims |
| --- |

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____ No __✓__

B.  If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.  Parties to the previous lawsuit:

Plaintiff _____

Defendants _____

2.  Court (if federal court, name the district; if state court, name the county) _____
   _____

3.  Docket or Index number _____

4.  Name of Judge assigned to your case _____

5.  Approximate date of filing lawsuit _____

6.  Is the case still pending?  Yes ____   No ____

   If NO, give the approximate date of disposition _____

7.  What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in  your  favor?  Was  the  case  appealed?) _____
   _____
   _____

| On other claims |

C.  Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

   Yes ____   No ____

D.  If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.  Parties to the previous lawsuit:

Plaintiff _____

Defendants _____

2.  Court (if federal court, name the district; if state court, name the county) _____
   _____

3.  Docket or Index number _____

4.  Name of Judge assigned to your case _____

5.  Approximate date of filing lawsuit _____

6.  Is the case still pending?  Yes ____   No ____

   If NO, give the approximate date of disposition _____

7.  What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____
   _____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __1__ day of __December__, 20 _15_.

Signature of Plaintiff      _Daniel D. Jesus_

Inmate Number            _03A1713_

Institution Address        _Downstate Conn Facility_

_Box F Redschool house Rd_

_Fishkill NY 12524-0445_

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this __1__ day of __December__, 20_15_, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:   _Daniel D. Jesus_



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
DANIEL PATRICK MOYNIHAN COURTHOUSE
500 PEARL STREET
NEW YORK, NEW YORK 10007

PRO SE OFFICE
Room 230

RUBY J. KRAJICK
Clerk of Court

### Instructions for Filing
### Petition for a Writ of *Habeas Corpus* under
### 28 U.S.C. § 2254

1.  **Who should use this form:** You should use this form if you are in custody (such as in prison or subject to supervised release) based on a state court conviction <u>and</u> you are challenging your state court conviction or sentence because it violates federal law, such as the United States Constitution. You must first present to the state court your arguments that your conviction violates federal law, either on direct appeal or in an application outside the appeal process. You must include in your federal § 2254 petition all grounds for relief and facts supporting such grounds and indicate that each ground was already presented to the state court. If you were convicted in Bronx, Dutchess, New York (Manhattan), Orange, Putman, Rockland, Sullivan or Westchester counties, then the Southern District of New York is the proper district to file a § 2254 petition.

2.  **Who should *not* use this form:** If you want to challenge the validity of a federal court judgment of conviction and sentence, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered that judgment. If you want to challenge your immigration detention or other immigration related issues, you should use the form Petition for a Writ of *Habeas Corpus* under 28 U.S.C. § 2241 (For Immigration Matters).

3.  **Caption:** The caption is located in the top left corner on the first page of the petition. You, as the person filing the petition, are the "petitioner." Generally, the Warden or Superintendent of the institution in which you are confined is the "respondent." The respondent may also be the government official responsible for your confinement.

4.  **Signature:** The petition must be signed with a pen.

5.  **Fee:** The filing fee for a *habeas* petition brought under 28 U.S.C. § 2254 is $5. If you cannot afford to pay this fee, you can request that the Court waive the fee by submitting a Request to Proceed *In Forma Pauperis*.

ᴬᴼAO 241
(Rev. 10/07)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: _Southern District_ |
|---|---|

| Name (under which you were convicted): _Daniel DeJesus_ | Docket or Case No.: _5154/2000_ _2000 NY070668_ |
|---|---|

| Place of Confinement : _Downstate Correctional Facility_ | Prisoner No.: _03A1713_ _07 cw 7144_ |
|---|---|

Petitioner (include the name under which you were convicted)     Respondent (authorized person having custody of petitioner)

v.

_Daniel DeJesus_                     _Ada Perez_

The Attorney General of the State of  _Eric Schneiderman_

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging: _100 Centre Street_ _New York, N.Y. 10013_

   (b) Criminal docket or case number (if you know): _5154/2000    2000 NY070668_

2.  (a) Date of the judgment of conviction (if you know): _December 19, 2002_

   (b) Date of sentencing: _March 21, 2003_

3.  Length of sentence: _20 years to life_

4.  In this case, were you convicted on more than one count or of more than one crime?  ☐ Yes  ☑ No

5.  Identify all crimes of which you were convicted and sentenced in this case:

6.  (a) What was your plea? (Check one)

   ☑ (1)   Not guilty       ☐ (3)   Nolo contendere (no contest)

   ☐ (2)   Guilty          ☐ (4)   Insanity plea

AO 241
(Rev. 10/07)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? *NO*

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury   ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes   ☑ No

8. Did you appeal from the judgment of conviction?

☑ Yes   ☐ No

9. If you did appeal, answer the following:

(a) Name of court: *Appellate Division, First Department*

(b) Docket or case number (if you know): *5154/2000, 2000 NY 07668*

(c) Result: *Affirmed*

(d) Date of result (if you know): *September 21, 2006*

(e) Citation to the case (if you know):

(f) Grounds raised:

(g) Did you seek further review by a higher state court?   ☑ Yes   ☐ No

If yes, answer the following:

(1) Name of court: *New York State Courts of Appeals*

(2) Docket or case number (if you know): *5154/2000 2000 NY 07668*

(3) Result: *Leave denied*

(4) Date of result (if you know): *February 21, 2007*

(5) Citation to the case (if you know):

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court? ☐ Yes ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court? ☐ Yes ☑ No

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☑ No

(7) Result:

(8) Date of result (if you know):

AO 241
(Rev. 10/07)

(b) If you filed any second petition, application, or motion, give the same information:    NO

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐  Yes    ☑  No

    (7) Result:

    (8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:    NO

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

AO 241
(Rev. 10/07)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:   ☐ Yes   ☑ No

(2) Second petition:   ☐ Yes   ☑ No

(3) Third petition:   ☐ Yes   ☑ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

On July 25, 2000, on about 6:45 pm Detectives from the 23rd precinct came to my home at 80 East 110 St #1C, ground floor where incident occured and requested for my brother Antonio Dejesus and would like for him to come to the precinct for questioning about a dispute and muder. My brother agreed, but asked if someone could accompany him, he asked if I would and I agreed. At 7pm we arrived at precinct, my brother was taken to an interrogation room, I was put in lieutenant office by Detective Everette. He began by asking if I knew anything I said I did not. He began going back and forth feeding me info

(b) If you did not exhaust your state remedies on Ground One, explain why:

"SEE ATTACHED"

(c)   **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?     ❒ Yes    ❒ No

    (2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

       ❒ Yes   ☑ No

    (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion or petition?      ❒ Yes  ☑ No

    (4) Did you appeal from the denial of your motion or petition?     ❒ Yes  ☑ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ❒ Yes  ☑ No

    (6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241
(Rev. 10/07)

Page 8

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

AT ABOUT 10PM, THE COMMANDING OFFICER, LIEUTENANT CANIGLIA CAME IN AND SAT ACROSS FROM ME, STARES AT ME AND SAYS,"I DONT BELIEVE WHAT YOUR TELLING US," I HAVE WITNESSES WHO SAW YOU AT THE CRIME SCIENCE," UP THERE ON THE 20TH FLOOR. WITHOUT WARNINES, HE GOT UP AND LEFT, THEN SENT TWO MORE DETECTIVES, PARR AND HICKS CAT OUT OF BAG.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)     **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes     ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

AO 241
(Rev. 10/07)

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :

have used to exhaust your state remedies on Ground Two

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

AT ABOUT 11:20 PM DETECTIVE PARR AND HICKS CAME IN AND ASKED IF I COULD FOLLOW UP ON MY INFORMATION I MIGHT HAD, I THEN INCRIMINTED MYSELF BY PLACING MYSELF AT THE SCENE OF CRIME AND WAITED FOR MY BROTHER TO SHOOT PECK. I EXPLAINED I DIDNT KNOW WHAT WAS GOING TO HAPPEN. WITHOUT WARNINGS I SIGNED A1 SECOND CONFESSION, AT ABOUT 12:15 AM, PARR ASKED IF I COULD STICK AROUND CAUSE HE HAD PEOPLE WOULD LIKE TO HEAR MY INFORMATION, AT 12:50 AM, I WAS THEN FINGER AND PALM PRINTED, AND WAS ASKED FOR CONSENT TO SERCH MY BEDROOM FOR CLOTHING. ILLEGAL SEARCH AND SEIZER.  FRUIT OF THE FIRST, PRIOR STATEMENT, MY BROTHER ANTONIO DEJESUS WAS NEVER CHARGED, I WASNT ALLOWED TO SEE HIM OR MY MOM, OR TO CALL HOME.

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?          ☐ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes     ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?          ☐ Yes     ☑ No

(4) Did you appeal from the denial of your motion or petition?          ☐ Yes     ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☐ Yes     ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

AO 241
(Rev. 10/07)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

AT 3AM JULY 26, 2000, TWO DISTRICT ATTORNEYS CAME IN  FRAZER AND SHULMAN
CAME IN AND TOOK A VIDEO CONFESSION FROM WHICH I WAS GIVEN WARNINGS FOR THE FIRST
TIME. IT LASTED ABOUT 45 MINUTES, I PROVIDED MY STATEMENT BUT GOT INTO MORE
MORE DETAIL. AT THE END OF TAPE, ADA FRAZER TRIED TO PUT WORDS IN MY MOUTH
BY ASKING ABOUT THE TIME I PLACED MYSELF AT THE SCENE... AII WAS ARRESSTED
THE FOLLOWING DAY AT 2:30PM. DETECTIVE PARR WAS ALSO PRESENT. I THEN
UNKNOWINGLY WAIVED MY RIGHTS UNDER MIRANDA.

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐  Yes     ☐  No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐  Yes     ☑  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241
(Rev. 10/07)

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?      ☐ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?      ☐ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

13.   Please answer these additional questions about the petition you are filing:

(a)   Have all grounds for relief that you have raised in this petition been presented to the highest state court

having jurisdiction?   ☐ Yes   ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them:

(b)   Is there any ground in this petition that has not been presented in some state or federal court?  If so,

ground or grounds have not been presented, and state your reasons for not presenting them:

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

that you challenge in this petition?   ☐ Yes   ☐ No

If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues

raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy

of any court opinion or order, if available.

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

the judgment you are challenging?   ☐ Yes   ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

raised.

AO 241
(Rev. 10/07)

16.     Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: *Fredrick Losinsky, 325 Broadway New York, NY*

(b) At arraignment and plea: *Fredrick Losinsky 325 Broadway New York, NY*

(c) At trial: *Fredrick Losinsky, Lynn Troy Henderson*

(d) At sentencing: *Fredrick Losinsky, Lynn Troy Henderson*

(e) On appeal: *Adrianne Hale, Renny Elganten 199 Water Street, New York, NY 10038*

(f) In any post-conviction proceeding: *no*

(g) On appeal from any ruling against you in a post-conviction proceeding: *no*

17.     Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    ☐ Yes   ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    ☑ Yes   ☐ No

18.     TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

I Daniel DeJesus declare under penalty and perjury, in violation of the Constitution of the United States, laws and treaties, equal protections and Under the color of State law come before this court on a claim of mercy. I have been wrongfully incarcerated for the last 15½ years of my life and in the process of bringing my first complete, but third amend petition. My last few attempts were unsuccessful because of limited education and knowledge of law. But God has given me the strength and ability to keep fighting and keep my life and freedom.

hope and faith alive, to keep fighting for my life and freedom.

August 10, 2007 I was ordered to submit an amend petition to this pro se office within 60 days of the date of that order. My orionginal petition did not conform requirements of Rule 2(c), Rules governing section 2254 cases in the United States District Court (Rule 2(c)). Same on September 19, 2007 failed to conform, Also I failed to allege facts...

But due to my lack of knowledge of the law of this courts rules and regulations I was unsuccessful (07 civ 7144) (KMW) (LAK) (HBP).

I am a layman, do not know the law, but I respectfully ask this Honorable court to please allow me to challenge my claims and wrongful conviction in fairness, goodfaith, impartiality, integrity, legality and Equity.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.  § 2244(d) provides in

part that:

(1)   A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: *Declatory and injunctive relief, monetary, compensatory equitable restitution and mental anguish, invalidation of conviction. Copy of the written decision of the court dated June 6, 2002, Hon. H. altman presided on hearing.*

or any other relief to which petitioner may be entitled. *Abuse of descretion, plaintiff also seek's relief in violation of his 1st, and 5th amendment rights of slander and the right against self incrimination, unreasonable delay and involuntary servitude, Freedom of Speech, Malicious prosecution.*

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _12-1-15_ (month, date, year).

Executed (signed) on _12-1-15_ (date).

*Daniel DeJesus*
_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

PART70 AUG – 4 2000
6th GRAND JURY

Filed:

WAIVED

[Part 50, 8/15/00]
2000NY070668

No.

S / SY - 2000

THE PEOPLE OF THE STATE OF NEW YORK

-against-

DANIEL DEJESUS,

Defendant.

INDICTMENT

ROBERT M. MORGENTHAU, District Attorney

A True Bill

Foreman

MURDER IN THE SECOND DEGREE, P.L. 125.25(1), 1 Ct.

ADA ROBERT FRAZER
TRIAL BUREAU 40

SUPREME COURT   :   NEW YORK COUNTY
TRIAL TERM   :   PART 41
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE PEOPLE OF THE STATE OF NEW YORK :

              - against -           :    Indictment No. 5154/00
                                       :

DANIEL DEJESUS,
                      Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

HERBERT I. ALTMAN, J.:

       Defendant moves to suppress statements he made to the police on July 25 and 26, 2000.

       On April 15 and 16, 2002 <u>Huntley</u> and <u>Dunaway</u> hearings were held before me in connection with the instant case. Four witness testified for the People: Detectives Oritt Everett and Thomas Lombardo, Lieutenant Louis Caniglia and Detective Sergeant Brian Paar. I fully credit their testimony. The defense did not present any witnesses. My findings of fact and conclusions of law follow.

<u>Findings of Fact</u>

       On July 25, 2000 the police were in a building located at 80 East 110 Street investigating the homicide of Michael Peck, who had been shot on the twentieth floor of the building at 9:15 that morning. A tip from an unknown informant had alerted them

to the fact that, a week or two before the shooting,   there had been an argument between Peck and an occupant of Apartment 1C. Detective Everett attempted to speak to someone in that apartment that morning, but no one answered his knock. Early that afternoon Detectives Paar and Hicks visited the apartment and spoke to Eddie Mendez, who told him that he and his wife resided there along with the defendant and the defendant's brother, Anthony. Mendez told the detectives that he knew nothing about the murder.

Shortly before 7:00 p.m. Everett, Lieutenant Caniglia and Sergeant Cannon visited the apartment and spoke with Anthony DeJesus. They told him that they wanted to speak with him at the 23rd Precinct station house about the murder of Mike Peck. Anthony said that he was willing to accompany them but asked if he could bring someone with him. The police agreed. Although the police had not asked defendant to go with them, he agreed to go at the behest of his brother. The two were then driven to the station house. Neither was handcuffed . The police placed Anthony in an interview room where he was questioned by Detective Lombardo. The defendant was asked to sit in Lieutenant Caniglia's office, a small room containing a couch, a desk, two chairs and some filing cabinets. The door of the room was left unlocked.

At approximately 7:00 p.m. Detective Everett entered the room and began to question the defendant about his knowledge of the murder. He did not administer Miranda warnings. The defendant told him that he knew nothing other than what he

He was still not confined or restrained. Caniglia left the room and instructed detectives Paar and Hicks to continue the questioning.

Paar began to speak with the defendant at about 11:00 p.m. Paar told him that he had heard that there had been a dispute with the deceased, but the defendant did not directly respond to this comment. After a few questions he began to give Paar and Hicks a narrative.   Paar took notes as the defendant spoke. In the course of his session the detective offered him food, drink and cigarettes.  The defendant told the detectives that he had returned to his apartment at 4:00 or 5:00 that morning to be asked by Anthony, who had a gun at his waist,  to go up to the twentieth floor and wait for him. The defendant asked his brother why he wanted him to do that but Anthony stated only that he wanted to "take care of business." He stated that he did not know what his brother was up to, but he went up  as requested and  waited in the stairwell. After 20 minutes  Anthony appeared and asked him if had seen Mike. When he answered that he had not, Anthony stated that they would wait. Half an hour later the defendant saw Michael Peck come into the hallway and alerted Anthony.  He observed Anthony come out of the stairwell and fire four or five shots at the deceased before running away.

After the defendant concluded his narrative Paar read his statement back to him and the defendant signed it. The detective told him that there might be other people who would like to speak with him and that he (Paar) would appreciate it if he remained there and continued to cooperate. The defendant still did not indicate any

-4-

that he was in custody.  The police had given no indication that they considered the defendant a suspect in the murder. He had not accompanied them to the station house at their behest, but at the request of his brother. He was not handcuffed on the way to the station house and the police did not confine his freedom of movement in any way when he got there. Indeed, for the most of that entire night and early morning he sat unrestrained in  Lieutenant Caniglia's office with the door open. His interview with Detective Everett was unremarkable. Everett did not accuse him of any crime and his questions were purely investigatory. The defendant's statement to him was exculpatory.

Lieutenant Caniglia's lie to the defendant to the effect that someone had seen him on the twentieth floor during the incident was not the type of trick that was so fundamentally unfair that it violated due process, and it was not likely to induce a false confession (*see* People v.Tarsia, 50 NY2d 1;  People v. Walls, 199 AD2d 292), Furthermore, it did not render the setting custodial (*see* People v.Bush, 220 AD2d 607; People v. Spellman, 168 AD2d 318). The admission that followed to the effect that defendant had seen his brother shoot the victim did not  inculpate him as an actual participant in the shooting and was consistent with the belief held by the police at that time that defendant was no more than a witness to the crime. Defendant had not  asked to leave the station house and was not asked to stay. He was permitted to remain in the Lieutenant's office alone, unguarded and unrestrained.

The police made this request of the defendant after Paar had finished speaking with him. When the defendant was next questioned, at the beginning of his videotaped statement, he was advised of and waived his <u>Miranda</u> rights. At this point the issue of custody was no longer relevant. By the end of that statement, which was voluntarily made, he admitted that he had known that his brother was going to shoot the victim and that he (defendant) had acted as a lookout. At that time, there having been probable cause to do so, the police placed him under arrest.

I therefore find that defendant's statements to Everett and Parr were non-custodial. Defendant was not in custody until he implicated himself during the videotaped statement, by which time he had waived his <u>Miranda</u> rights. I find that statement to have been voluntary. Additionally, none of the statements were the fruit of an illegal arrest. Accordingly, defendant's suppression motions are denied in their entirety.

J.S.C.

Dated: June 6, 2002

1    was a whole hub-hub of detectives, police

2    officers huddling in the lobby.  They told him,

3    "you got to go back in now."

4         Okay?

5         Not now, you'll hear that's what they

6    were doing with everybody in the building.  There

7    were people that were trying to come back in

8    later in the day that were being told "you have

9    to wait; they are processing a crime scene," what

10   not.

11        And what did they do after getting that

12   statement?

13        This is just a fair investigation, de-

14   signed to just determine what happened.

15        They let him go?

16        No.

17        You'll hear that for reasons that make

18   no sense, if they are telling the truth, if the

19   detectives are telling the truth after he gives

20   this statement - - the person who takes it

21   doesn't even tell, if he's to be believed, other

22   detectives, the lead detective, the lieutenant

23   that Danny DeJesus has just provided a statement

24   in which he says he's home at the time and tries

25   to leave; the cops told him to go back in, he

1    doesn't even tell them that – – and for no reason

2    this Lieutenant Caniglia  comes into the room,

3    sits down, and the first thing out of his mouth,

4    even though he had absolutely no reason, he'll

5    tell you, to think anything here, was, "hey, we

6    got witnesses who put you right at the scene of

7    the crime, right up there on the 20th floor."

8              And if they are to be believed, Lieu-

9    tenant will tell you that this person, who just

10   wrote out a statement to the police telling them

11   where he was at the time of the crime, the

12   second, literally, the second after Caniglia says

13   that to him, he gave it up.  That was it.

14             Like okay; you're out of here.

15             I saw what happened, my brother did it.

16             That's the police story here.

17             And I beg you to please do what the

18   Judge said, scrutinize things carefully, whoever

19   the witness is.  You scrutinize it carefully; ask

20   yourself whether it makes sense; does it comport

21   with life experience.

22             What the evidence will show it is even

23   stranger than that.  Because you'll learn that

24   the first detective that was working on Mr.

25   DeJesus, this Detective Everett, he'll tell you

1    that after he gives this statement about being

2    home, it appeared that he was just about to give

3    more information, tell us something that - - like

4    he was a witness or something, and what does

5    Detective Everett want you to believe, apparent-

6    ly, at that moment when he's getting a to know

7    the guy, when the guy is about to talk, he'll

8    tell you he got up and he left the room and that

9    was the end of Detective Everett.  That's what

10   he'll tell you when he testifies there.  Right at

11   the point when the guy is about to give it up, he

12   walks out of the room and that's when Caniglia

13   walks in, detective number 2, and says what he

14   says.

15        Even stranger than is that Caniglia

16   will tell you, I believe, right at the point when

17   Danny now is saying, "okay, I wasn't in my apart-

18   ment with the people I've told you about at that

19   time, I was up on the floor and I saw my brother

20   shoot the guy," what does Lieutenant Caniglia do,

21   when the person now, if he's to be believed, is

22   talking; right?

23        Lieutenant Caniglia, like Detective

24   Everett, the evidence will show, he got up and

25   he'll tell us, "hey, I didn't want to talk to him

Opening - Defense                          51

1    at that point; I got up and I left."

2          I beg you to ask yourself if that makes

3    sense; once again, if it could happen that way;

4    okay?

5          He will tell you, Caniglia will, "well,

6    at that point I'm a lieutenant, I left. I said,

7    bring in other detectives."

8          So, you have Everett, Caniglia now, yet

9    a third relay of detectives, Parr and Hicks come

10   in. You'll see what happened when they went

11   through things with Mr. DeJesus, ultimately pro-

12   ducing, later that night, a written statement,

13   which will be before you.

14         That's the second written statement;

15   okay? The first one to Everett and the second

16   one to this fellow Parr.

17         Then you'll hear, after going over

18   things a number of times, they called down the

19   D.A.'s Office, as they do afterwards, after the

20   person has gone through things enough so all they

21   have do is turn the camera on.

22         And you have videotape that you'll see

23   next week.

24         Now, you'll learn that in the written

25   statement and in the videotaped statement, al-

1      though it is un-disputed that the shooting in

2      this case takes place at (nine-fifteen, nine-

3      twenty, nine-twenty-two) something within that

4      timeframe, in the written statement and on the

5      videotape Daniel DeJesus tells the police, tells

6      the prosecutor that he's up on the floor there at

7      five o'clock, five-thirty, six o'clock, six-

8      thirty in the morning, like hours and hours

9      before this could have taken place.

10              Okay?

11              And he repeats that a number of times,

12     this person who they say is just telling things

13     the way it is, telling the truth.  You can rely

14     on it.

               *PROSECUTOR COERCING MY WORDS*

15              But by the time the prosecutors are

16     done with him, of course, knowing that if they

17     don't at least get this person to say it was

18     later - - well, you know what happen, you put

19     this before a jury - - so, later on, towards the

20     end, you know, it's "you said you were up there,

21     you know, five, five-thirty, six, seven; could

22     this have been later on; could this have been

23     nine o'clock, ten o'clock?"

24              You'll see whether Mr. DeJesus is the

25     smartest guy in the world and can deal with

1    detectives, perhaps like you and I can.  It's

2    possible.

3              But all along it's five o'clock, it's

4    six o'clock and the shooting is at nine-thirty;

5    right?

6              And no one is claiming they are there

7    two, three, four hours waiting.  That's absurd.

8              The prosecutor tells you, "yeah, that's

9    a minor little thing in the face of a case where

10   you have absolutely no other evidence.  That

11   doesn't make it at all unreliable."

12             Well, you'll also learn that in the

13   videotaped statement that's taken Mr. DeJesus

14   talks about and is asked a few times "where is

15   the person shot" and he said "from behind."

16             And actually, the prosecutor says to

17   him, "did he ever turn around while he was being

18   shot" and he says "no."

19             Okay?

20             Well, you'll learn, not from me but

21   from the Medical Examiner, that this person Peck

22   not only was only shot in the front - - okay - -

23   nothing in the back, but at least some of the

24   shots were even closer than what was talked

25   about, like point-blank range.

1        Right?

2        And again, you know, folks, that's

3    minor.

4        Three hours early, shot in the back,

5    shot in the front, that doesn't make it reliable.

6    No reason to question it.

7        Mr. DeJesus, who, like many other

8    people in that building, in the area of, these

9    detectives had seen.

10        You'll learn that Mike Peck, being

11    wheeled down, out of the elevator, was worked on

12    in the lobby floor where he lives.

13        He tells the police that Mr. Peck has a

14    black hat and a white T-shirt on.

15        Okay?

16        And you'll learn that Mr. Peck had on a

17    red T-shirt, not a white shirt; he had on a red

18    cap, not a black cap.

19        Again, these are minor things.  Please

20    pay no mind to them in determining whether this

21    is a reliable statement, the prosecutor will

22    argue.

23        Mr. DeJesus tells them that he saw Mr.

24    Peck, he had a bookbag with him.

25        You'll hear the neighbors, the police,

Opening – Defense                     55

1    there's no bookbag at all.  Nothing like that.

2              These things, during the course of the

3    trial, I beg you, please pay attention.  These

4    are the things that I will argue to you, and I

5    hope you will see, create very reasonable doubts

6    about whether, ultimately, what was being told to

7    the police and the prosecutor, matters that came

8    about, I think you'll see as well, are simply not

9    true.  They, at least, raise reasonable doubts in

10   a case where they have nothing else.

11             There are a number of things in the

12   statement that you'll see that are correct - -

13   okay - - and the prosecutor has told you already

14   and will claim at the end of the case demon-

15   strates it has to be reliable, putting aside

16   these inconsistencies - - right - - these dis-

17   crepancies; right?  These include the fact that

18   Daniel DeJesus tells the police, on videotape the

19   D.A.'s Office, that he believes Peck was shot

20   four or five times.

21             Now, what you'll see, and I hope this

22   is important to you - - the prosecutor said in-

23   formation that only someone who was there would

24   have known - - not only did every detective

25   speaking with Daniel DeJesus that day know how

1     many times the person was shot, four or five,

2     they learned that as early as that morning at the

3     hospital when they spoke to a Dr. Blake, who was

4     trying, as he could, to revive Mr. Peck.

5              But you'll learn that the very first

6     detective, Detective Everett, during his interro-

7     gation of Danny, he told him how many times he

8     had been shot.  He's already said that under

9     oath, Detective Everett.

10             So, this notion he knew how many shots

11    were shots, he told them; number 1, and the the

12    police knew it.  It's not surprising they told

13    him.

14             He tells you he knew he had a doing

15    with him.  The prosecutor told you that everyone

16    who knew Mr. Peck knew he had a doing, a pet

17    Rottweil- er.  And you'll learn that this doing

18    was there.  Neighbors saw it; police saw it.

19             The doing was actually taken downstairs

20    to the lobby floor, masses huddling outside the

21    building, and actually like the A.S.P.C.A. or

22    some animal control group had to come and pick up

23    the doing.

24             So, this, I suggest to you the evidence

25    will not show, is a case where, when you're look-

1    ing at the statement alone - - and that's all

2    there is in this case  - - there will be things

3    about this statement that, when you think hard

4    about them, you can say it reveals details that

5    only someone who was there, only someone who par-

6    ticipated in it would know.  You'll see no such

7    thing here; none.

8            Sometimes you do have that in a state-

9    ment; I remember the person had a tatoo on their

10   hip area - - right - - the police haven't re-

11   vealed that information, no one would know about

12   it and it turns out that would be correct.  It

13   would be difficult for someone to argue they

14   weren't there and didn't see the person.

15           Nothing like that here.

16           You'll hear people were talking in that

17   area almost immediately.  This is a New York City

18   housing project.  The police are conducting can-

19   vasses, speaking to neighbors, stores - - anybody

20   see anything - - going up to people.  I told you,

21   people weren't even permitted to go back upstairs

22   or leave their apartment for a time when the

23   police were working there.

24           This is not a case where the prosecutor

25   can or will argue to you that only the defendant,

1    only the defendant, or maybe only the defendant

2    and his brother could possibly have had a mot5ive

3    to cause harm to this person.  He's already told

4    you the person, the guy is a drug dealer and was

5    a drug dealer.

6            You'll hear more about that.

7            This is not like a case where the hus-

8    band is engaged in an acrimonous relationship

9    with his wife and takes out an insurance policy

10   and the prosecutor can argue - -

11           MR. FRAZER:  Judge, I'm going to object

12   to this point because he's getting into an argu-

13   ment away from what he's intending to prove in

14   this case.

15           MR. SOSINSKY:  Well - -

16           THE COURT:  I believe that there was

17   some of that earlier this morning.  And you're

18   accurate; but you did it too.

19           MR. SOSINSKY:  In any event, I don't

20   intent to belabor this.

21           The point is, this is not a case, as

22   you listen to it, where you will sit there and

23   you will say or he will even urge you, because he

24   can't, that the only person in the world who

25   might have had a motive to cuase harm to Mr. Peck

1    was Antonio DeJesus.

2              In fact, other than the statement - -

3    okay - - there is no evidence of motive to harm

4    Mr. Peck at all.

5              And you'll hear, even according to the

6    statement, if it's true, that Peck's friends were

7    standing right there.  They were part of this so-

8    called beef or dispute.  The victim's friends

9    were there when it happened, if it happened.

10   They say it did.

11             They won't have anybody, nobody coming

12   into court to corroborate that that's true; that

13   they were there and saw such a thing.

14             It's not a case where they can argue to

15   you only this defendant and/or his brother had an

16   opportunity to do so because they were the last

17   known people to be seen with the deceased.

18             Right?

19             This took place in a public housing

20   project, in the hallway, the hallway inside of a

21   building.  There's no security there.  There's no

22   requirement that someone check I.D.'s, nothing

23   like that.  So, there's no sole motive or sole

24   opportunity here, in addition to whatever else

25   there is.

1              There is also, you will see, at least a

2    reasonable doubt regarding whether or not Mr.

3    Peck was doing what the prosecution claims he

4    was, which was, by the way, only based on the

5    statement; that is, leaving his apartment to go

6    walk his doing downstairs - - right - - versus

7    what I believe you will see the evidence shows,

8    which is that he had just come up, got off the

9    elevator and a person with him, who rode up in

10   the eleva- tor with him or was standing right

11   outside the elevator waiting for him to get to

12   the front, where all the shots are.

13              Okay?

14              You'll see other bits of physical evi-

15   dence that I will argue to you at the end of the

16   case proves that this is far more likely than

17   this theory of the prosecutor, that was as his

18   back was turned, he waited to go on the elevator.

19              At the end of the case, if you put

20   aside, as you must, sympathy, prejudice, all the

21   other things the Judge told you play no part in a

22   criminal courtroom, and you do your job, which

23   is, in this case, to say "has this charged been

24   proven beyond any reasonable doubt," I am sure

25   you will have sufficient reasons to doubt that

Daniel De Jesus # 03A1713
Downstate Correctional Facility
Box F. Red Schoolhouse Rd
Fishkill. NY 12524-0445


Dear Clerk,

        I Daniel De Jesus, under penalty of perjury come before
this court on 12-1-15 , on a claim of mercy. I have been incarcerated for
the last fifthteen years of my life and in the process of bringing my
first complete, but third amend petition. My last few attempts were
unsuccessful because of my limited education and knowledge of the law.
 But as God has given me the ability and strength to keep fighting and to
keep my hope and faith alive. to keep fighting for my life and freedom.

        Back in January of 2008 was my last chance to connect my
petition but failed due to my lack of knowledge of law of this courts rules
and regulations they were unsuccessful, by chief Judge Kimba M. Wood.
(07 civ 7144). I am a layman, I don't know law, But I respectfully
ask this honorable court to please allow me to challenge my claims and
wrongful conviction.


                        Daniel De Jesus 03A1713

# State of New York
# Court of Appeals

BEFORE:  HON. ROBERT S. SMITH,

Associate Judge

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

**CERTIFICATE
DENYING
LEAVE**

DANIEL DE JESUS,

Appellant.

I, ROBERT S. SMITH, Associate Judge of the Court of Appeals of the State of New York, do hereby certify that upon application timely made by the above-named appellant for a certificate pursuant to CPL 460.20 and upon the record and proceedings herein,* there is no question of law presented which ought to be reviewed by the Court of Appeals and permission is hereby denied.

Dated: *February 21, 2007*
New York, NY

_____
Associate Judge

***Description of Order*:**  Order of the Supreme Court, Appellate Division, First Department, entered September 21, 2006, affirming a judgment of the Supreme Court, New York County, rendered March 21, 2003.

12-1-15.

Daniel De Jesus 03A1713
07 civ 7144 LAK HBP KMW
Downstate Correctional Facility
Box F. Red Schoolhouse Road
Fishkill, New York 12524-0445

Sworn to before me this
2 day of December 20/5
J. Carmichael
Notary Public



JUANITA CARMICHAEL
Notary Public, State of New York
No. 01CA6122155
Qualified in Dutchess County
Commission Expires Feb. 07, 20_4_

I Daniel De Jesus declare under penalty and
perjury in violation of the Constitution of the United States and
under the color of State law and Equal protection, is being held
unlawfully and unconstitutionally in violation of the Constit-
ution by acts of the State and its Officals, police and district
attorney office for the last fifthteen and a half years of my
life by use of Mental, psychological coercion, trickery and
deciet, deception and deprivation of freedom. No person shall
be compelled to be a witness against himself or present evid-
ence against himself

## "Facts of Case"

On July 25, of 2000, at about 640 pm, Detectives
from the 23 precinct came to my home at 80 E. 110 st "1C, ground
floor where incident occured and requested for my brother
Antonio De Jesus for questioning and Would like for him to come
to the precient for some questions about a dispute and homicide.
My brother agreed, but asked if someone could accompany him
and I agreed...

At about 7 pm we arrived at the precient, my brother was
taken to an interrogation room while I was seated between
two individuals named Malcom and Jessica (India) who were
also questioned. At about 7:20 pm I was taken into the lieuten-
ants office for questions by Det. Oritt Everett. He began by
asking if I knew anything about the murder I explained I did
not. He began coming in and out feeding me information on how
many times he was shot and where, if I told anyone about what
I observed that morning I said I did not. I signed a first
statement from that point my life changed. I asked to see my
mom and brother but never did... Everett left. No Warnings

At about 10:15 pm, the commanding officer lieutenant Louis Caviglia comes in his office and sits across from me and at stares at me as says," I dont believve what your telling us, I have witeress who say saw you at the crime scene on the 20th floor. Without warnings he left and sent two more detectives.

At about 11:20 pm Detectives Brian Parr who was the lead detective, along with Billy Hicks came into the office. Parr asked if I could follow up on information I might had. I then incriminated myself by placing myself at the crime scene and saw my brother shot Micheal Peck. Without warnings I signed a second statement written out by Parr. He left.

Det parr came back around 12:15 pm and asked if I could stick around cause he had people who wanted to hear my information. At about 12:40 pm I was finger and palm printed.

He also searched and siezed belonging from home, illegal search and siezer.

At 3: am. July 26, 2000 two Assistant District attorneys came in along with Det. Parr and took a videotaped confession by ADA Robert Frazer and Micki Shulman. I was given Miranda warnings for the first time and unknowingly waived my rights. it last for about 45 minutes. I provided my third incriminating admission, more detail. I never admitted to anything. ADA Frazer tried to put words in my mouth about the time I said I was at the crime scene.

I was arrested the following afternoon at 2:30 pm I was transferd to MDC and held until arraingment. I was charged with second degree murder acting in concert with intent. My brother Antonio D. Jesus was never charged which he was claimed to be the shooter. I was assigned counsel who informed me he didn't handle homicide case. I was assigned Fredrick Sosinsky. Indictment filed August 4, 2000. I was transferd to Rikers Island where I was held for 2½ years awaiting hearing and trial.

On April 15, 2002 a adversarial proceeding was held. Honorable Herbert Altman began hearing on the suppression of statements. Judge Altman violated my constitutional rights by taking my first prior statement and excluded it from evidence then used my second statement and video admission against me to attain my conviction. he failed to suppress statements number 2 and video cause they are the fruit of the first. On December 13, 2002 trial began. Honorable Edward Mc Laughlin presided my jury trial. the jury found me guilty as charged on December 19, 2002. On March 21, 2003 I was sentenced to 20 years to life.

Davil D. Jesus

12-1-15

Daniel DeJesus 03A1713

07 civ 7144 LAK HBP KMW

Downstate Correctional Facility

Box F. Red Schoolhouse Road

Fishkill, New York 12524-0445

Sworn to before me this
2 day of December 2015
J. Colon Leal
Notary Public

JUANITA CARMICHAEL
Notary Public, State of New York
No.01CA6122155
Qualified in Dutchess County
Commission Expires Feb. 07, 20__

I Daniel DeJesus declare under penalty and
perjury in violation of the Constitution of the United States and
under the color of State law and Equal protection, is being held
unlawfully and unconstitutionally in violation of the Constit-
ution by acts of the State and its Officals, police and district
attorney office for the last fifteen and a half years of my
life by use of Mental, psychological coercion, trickery and
deceit, deception and deprivation of freedom. No person shall
be compelled to be a witness against himself or present evid-
ence against himself

"Facts of Case"

On July 25, of 2000, at about 6:40 pm, Detectives
from the 23 precient came to my home at 80 E. 110 st "1C, ground
floor where incident occured and requested for my brother
Antonio DeJesus for questioning and Would like for him to come
to the precient for some questions about a dispute and homicide.
My brother agreed, but asked if someone could accompany him
and I agreed...
At about 7 pm we arrived at the precient, my brother was
taken to an interrogation room while I was seated between
two individuals named Malcom and Jessica (India) who were
also questioned. At about 7:20 pm I was taken into the lieuten-
ants office for questions by Det. Oritt Everett. He began by
asking if I knew anything about the murder I explained I did
not. He began coming in and out feeding me information on how
many times he was shot and where, if I told anyone about what
I observed that morning I said I did not. I signed a first
statement, from that point my life changed. I asked to see my
mom and brother but never did... Everett left. No Warnings

At about 10:15 pm, the commanding officer lieutenant Louis Cariglia comes in his office and sets across from me and at stares at me or says," I dont believye what your telling us, I have witness who say saw you at the crime scene on the 20th floor. Without warnings he left and sent two more detectives.

At about 11:20 pm Detectives Brian Parr who was the lead detective, along with Billy Hicks came into the office. Parr asked if I could follow up on information I might had. I then incriminated myself by placing myself at the crime scence and saw my brother shot Mickeal Peck. Without warnings I signed a second statement written out by Parr. He left.

Det parr came back around 12:15 pm and asked if I could stick around cause he had people who wanted to hear my information. at about 12:40 pm I was finger and palm printed.

He also searched and siezed belonging from home, illegal search and siezer.

At 3: am. July 26, 2000 two Assistant District attorneys came in along with Det. Parr and took a videotaped confession by ADA Robert Frazer and Mickie Shulman. I was given Miranda warnings for the first time and unknowngly waived my rights. it last for about 45 minutes. I provided my third incriminating admission, more detail. I never admitted to anything. ADA Frazer tried to put words in my mouth about the time I said I was at the crime scene.

I was arrested the following afternoon at 2:30 pm I was transferd to MDC and held until arraingment. I was charged with second degree murder acting in concert with intent. My brother Antonio D. Jesus was never charged which he was claimed to be the shooter. I was assinged counsel who informed me he didn't handle homicide case. I was assigned Fredrick Sosinsky. Endictment filed August 4, 2000. I was transferd to Rikers island where I was held for 2½ years awaiting hearing and trial.

On April 15, 2002 a adversarial proceeding was held. Honorable Herbert Altman began hearing on the suppossion of statements. Judge Altman violated my constelutional rights by taking my first prior statement and excluded it from evidence then used my second statement and video admission against me to attain my conviction. he failed to suppress statements number 2 and video cause they are the fruit of the first. On December 13, 2002 trial began. Honorable Edward Mc Loughlin presided my jury trial. the jury found me guilty as charged on December 19, 2002. On March 21, 2003 I was sentenced to 20 years to life.

Daniel D. Jesus

12-1-15

Daniel DeJesus 03A1713
07 civ 7144 LAK HBP KMW
Downstate Correctional Facility
Box F, Red Schoolhouse Road
Fishkill, New York 12524-0445

Sworn to before me this
2 day of December 2015
J. Carmichael
Notary Public



JUANITA CARMICHAEL
Notary Public, State of New York
No. 01CA6122155
Qualified in Dutchess County
Commission Expires Feb. 07, 20 19

     I Daniel DeJesus declare under penalty and perjury in violation of the Constitution of the United States and under the color of State law and Equal protection, is being held unlawfully and unconstitutionally in violation of the Constitution by acts of the State and its Officals, police and district attorney office for the last fiftkteen and a half years of my life by use of Mental, psychological coercion, trickery and decist, deception and deprivation of freedom. No person shall 'e compelled to be a witness against himself or present evidnce against himself

## "Facts of Case"

     On July 25 of 2000, at about 6:40 pm, Detectives from the 23 precient came to my home at 80 E. 110 st #1C, ground floor where incident occured and requested for my brother Antonio DeJesus for questioning and Would like for him to come o the precient for some questions about a dispute and homicide. My brother agreed, but asked if someone could accompany him nd I agreed...
     at about 7 pm we arrived at the precient, my brother was aken to an interrogation room while I was seated between wo individuals named Malcom and Jessica (India) who were lso questioned. At about 7:20 pm I was taken into the lieutenints office for questions by Det. Oritt Everett. He began by sking if I knew anything about the murder I explained I did ot. He began coming in and out feeding me information on how many times he was shot and where, if I told anyone about what I observed that morning I said I did not. I signed a first tatement from that point my life changed. I asked to see my rom and brother but never did... Everett left. No Warnings

At about 10:15 pm, the commanding officer lieutenant "ouis Cariglia comes in his office and sets across from me and at stares at me as says," I dont belueve what your telling us, I have witness who say saw you at the crime scene on the 20th floor. Without warnings he left and sent two more detectives.

At about 11:20 pm Detectives Brian Parr who was the lead detective, along with Billy Hicks came into the office. Parr asked if I could follow up on information I might had. I then incriminated myself by placing myself at the crime scence and saw my brother shot Micheal Peck. Without warnings I signed a second statement written out by Parr. He left.

Det parr came back around 12:15 pm and asked if I could teck around cause he had people who wanted to hear my information. at about 12:40 pm I was finger and palm printed.

He also searched and siezed belonging from home, illegal search and siezer.

At 3: am. July 26, 2000 two Assistant District attorneys came in along with Det. Parr and took a videotaped confession by ADA Robert Frazer and Micki Shulman. I was given Miranda warnings for the first time and unknowngly waived my rights. it last for about 45 minutes. I provided my third incriminating admission, more detail. I never admitted to anything. ADA Frazer tried to put words in my mouth about the time I said I was at the crime scene.

I was arrested the following afternoon at 2:30 pm I was transferd to MDC and held until arraingment. I was charged with second degree murder acting in concert with intent. My brother Antonio DeJesus was never changed which he was claimed to be the shooter. I was assigned counsel who informed me he didn't handle homicide case. I was assigned Fredrick Soinsky. Indictment filed August 4, 2000. I was transferd to Rikers Island where I was held for 2½ years awaiting hearing and trial.

On April 15, 2002 a adversarial proceeding was held. Honorable Herbert Altman began hearing on the suppesion of statements. Judge Altman violated my constitutional rights by taking my first prior statement and excluded it from evidence then used my second statement and video admission against me to attain my conviction. he failed to suppress statements number 2 and video cause they are the fruit of the first. On December 13, 2002 trial began. Honorable Edward Mclaughlin presided my jury trial. the jury found me guilty as charged on December 19, 2002. On March 21, 2003 I was sentenced to 20 years to life.

Dani DeJeuss

Dav...
Dav...
Ben F. Red School House Road
Wallkill, NY 12524-0445

RECEIVED
SDNY PRO SE OFFICE
2015 DEC 10 PM 3: 33

United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
Room 230 Pro se Office, 500 Pearl St
New York, NY 10007




DOWNSTATE
CORRECTIONAL
FACILITY




02.1M
0004279598
MAILED FROM ZIP CO
UNITED STATES POSTAL